IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,


     v.                                   Criminal Action No.
                                          5:13-CR-0194 (FJS)

MICHAEL J. DAVIS,

          Defendant.
_____

APPEARANCES:                   OF COUNSEL:

FOR THE UNITED STATES:

HON. RICHARD S. HARTUNIAN      GEOFFREY J.L. BROWN, ESQ.
United States Attorney for the         Assistant U.S. Attorney
Northern District of New York
100 South Clinton Street
Syracuse, NY 13261

FOR THE DEFENDANT:

MOYNIHAN LAW OFFICE          KENNETH M. MOYNIHAN, ESQ.
120 East Washington Street
Suite 927
Syracuse, NY 13202

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

Defendant Michael J. Davis is charged by indictment with unlawfully manufacturing marijuana. He was arraigned on the pending charges on May 16, 2013, and is currently being held in custody while awaiting trial.

After receiving a letter from defendant's former assigned attorney suggesting that Davis may not be competent to stand trial, the court ordered that a psychiatric or psychological examination be conducted to address the issue. As a result of that examination, a forensic psychologist has examined Davis and issued a report concluding that he suffers from a serious mental illness that serves to undermine his rational understanding of the nature and consequences of the proceedings against him, and that he is unable to assist his attorney effectively in his defense.

Following receipt of that report, the court conducted a competency hearing. At the hearing, the defendant, through new counsel, maintained that he is in fact capable of understanding the proceedings and charges against him and will be able to effectively assist his counsel in preparing his defense. The government, in a reversal of roles, argued that Davis is not competent to stand trial and should therefore be referred to the Attorney General for restoration of competency. For the reasons set forth below, I recommend a finding that the defendant is competent to stand

trial.

I.    BACKGROUND

Defendant Davis was indicted by a grand jury on May 8, 2013, and charged with unlawfully manufacturing marijuana, in violation of 21 U.S.C. § 841(a)(1).  Dkt. No. 1.  Defendant appeared for arraignment in connection with the charge before United States Magistrate Judge Thérèse Wiley Dancks on May 16, 2013.  Text Minute Entry Dated May 16, 2013.  At that appearance, Magistrate Judge Dancks assigned the Northern District of New York Federal Public Defender to represent Davis in the matter.  *Id.*  Five days later, following a detention hearing, defendant was ordered detained pending trial.  Dkt. No. 11.

On May 28, 2013, Assistant Federal Public Defender James F. Greenwald wrote to the court expressing his belief, based upon meetings with the defendant and his mother, that Davis may be suffering from a mental disease rendering him mentally incompetent to stand trial, and requesting that his client be referred for a psychiatric or psychological examination and report, pursuant to 18 U.S.C. § 4241(b).  Dkt. No. 12.  In response to that letter, Assistant United States Attorney Geoffrey J.L. Brown wrote to the court on May 30, 2013, advising that the government did not object to the request for a competency hearing.  Dkt. No. 13.  On

the same date, Senior District Frederick J. Scullin, Jr., issued an order referring the matter to me to determine whether a psychiatric or psychological examination was warranted and, if so, to order the examination and schedule a competency hearing as soon as practicable. Dkt. No. 14.

In accordance with Judge Scullin's order, I held a hearing on June 17, 2013, and found the existence of a substantial question as to whether Davis is fully able to understand the nature and consequences of the proceedings against him and properly assist in his defense. Text Minute Entry Dated June 17, 2013. Accordingly, an order was issued directing that he be committed to the custody of the Attorney General for a reasonable period for the purpose of conducting a psychiatric or psychological examination to determine his mental competence, pursuant to 18 U.S.C. § 4241. Dkt. No. 16.

Davis was subsequently transported to the Devens Federal Medical Center ("FMC Devens"), a federal Bureau of Prisons facility located in Ayer, Massachusetts, for the required examination. There, he was tested and examined by various professionals under the direction of Dr. Miriam Kissin, Psy. D, a forensic psychologist. *See generally* Dkt. No. 17 (sealed). The examination consisted of multiple clinical interviews, as well

as testing utilizing the Minnesota Multiphasic Personality Inventory Second Edition ("MMPI-2").  *Id.*  In addition, Dr. Kissin and her staff sought input from defendant's assigned counsel, Assistant United States Attorney Brown, Davis' mother, and Dr. Jonathan Braiman, the defendant's treating neurologist.[1]  *Id.*  Defendant was also routinely observed in his housing unit by both clinical and correctional staff, whose observations were incorporated into the findings of the report. *Id.*

On September 6, 2013, Dr. Kissin issued a report in which she concluded that Davis suffers from a psychotic disorder that compromises his rational understanding of the nature and consequences of the proceedings against him and interferes with his ability to assist his attorney effectively in his defense.[2]  Dkt. No. 17.  Following receipt of that report, the court conducted a hearing on October 7, 2013, at which the court relieved the Northern District of New York Federal Public Defender of the assignment in the case based upon an apparent difference between the defendant and his counsel concerning the issue of competence.  Text Minute Entry Dated Oct. 7, 2013.  The existence of that disagreement was reflected in the report prepared by Dr. Kissin, and I had an opportunity to

---

[1]     Davis declined the opportunity to meet with a psychiatrist at FMC Devens for a diagnostic consultation and medical evaluation.

[2]     Dr. Kissin's report was received during the recent competency hearing as Government Exhibit 1.

discuss the matter with both the Assistant Federal Public Defender and defendant at the hearing. *Id.* Kenneth M. Moynihan, Esq., was subsequently appointed, on October 16, 2013, to represent Davis in the matter. Dkt. No. 18.

Following the substitution of counsel, and after affording defendant's replacement attorney an opportunity to prepare, a hearing was held by me on February 20, 2014, to address the question of defendant's competence to stand trial. Text Minute Entry Dated Feb. 20, 2014. Dr. Kissin testified at that hearing by video conference, providing details of defendant's evaluation at FMC Devens and her opinions. *Id.* Davis also testified during the competency hearing. *Id.* At the conclusion of the hearing, I reserved decision and directed the parties to provide the court with their assessments of the testimony adduced during the proceeding. *Id.*

II.    DISCUSSION

A.    Competency Standard

A criminal defendant is competent to stand trial if he possesses a "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and . . . a rational as well as factual understanding of the proceedings against him." *United States v. Nichols*, 56 F.3d 403, 410 (2d Cir. 1995) (internal quotation marks omitted); *accord*,

*United States v. Simmons*, 993 F. Supp. 168, 170 (W.D.N.Y. 1998).

Section 4241 of Title 18 of the United States Code provide that a hearing

must be conducted upon a finding of "reasonable cause to believe that the

defendant may presently be suffering from a mental disease or defect

rendering him mentally incompetent to the extent that he is unable to

understand the nature and consequences of the proceedings against him

or to assist properly in his defense."  18 U.S.C. § 4241(a), (c).  Section

4241 further provides that

> [i]f, after the hearing, the court finds that by a
> preponderance of the evidence that the defendant is
> presently suffering from a mental disease or defect
> rendering him mentally incompetent to the extent
> that he is unable to understand the nature and
> consequences of the proceedings against him or to
> assist properly in his defense, the court shall
> commit the defendant to the custody of the Attorney
> General.

18 U.S.C. § 4241(d); *see also Nichols*, 56 F.3d at 410; *Simmons*, 993 F.

Supp. 2d at 170.

Ordinarily, it is the defendant who claims to lack the requisite

competence to stand trial.  In that circumstance, the burden of establishing

lack of competency to stand trial rests with the defendant.  *Cooper v.

Oklahoma*, 517 U.S. 348, 362 (1996).  A defendant seeking to establish

that he is not competent to stand trial must do so by a preponderance of

the evidence.  *Cooper*, 517 at 362; *Nichols*, 56 F.3d at 410; *Simmons*, 993

F. Supp. at 170.  While the defendant in this instance claims to be

competent to stand trial, the court nonetheless has an obligation to make

an independent assessment and determine whether a preponderance of

the evidence establishes otherwise.  *See U.S. v. Holmes*, 671 F. Supp.

120, 122 (D. Conn. 1987) (holding that the determination regarding a

defendant's competency "is a matter 'left to the sound discretion of the

district court'" (quoting *Newfield v. United States*, 565 F.2d 203, 206 (2d

Cir. 1977)).

    B.    <u>The Evidence in this Case</u>

Dr. Kissin reports that, physically, defendant has suffered from two

conditions of note.  Approximately eighteen years ago, he was diagnosed

with squamous cell carcinoma, a condition that resulted in the surgical

removal of three quarters of his tongue and part of his neck.  In addition,

Davis was diagnosed three years ago with multiple sclerosis ("MS"), for

which he is treating with Dr. Braiman.  Dr. Braiman indicates that, through

medication, including the use of Rebif, Davis' MS has stabilized.[3]

Davis' past mental health history has included treatment for trauma-

related symptoms associated with sexual abuse experienced by him as a

---

[3]    Davis states that he "self-medicates" for his MS utilizing ketamine hydrochloride.

child.  That treatment occurred in the context of a substance abuse intervention.  In addition, Davis was prescribed Wellbutrin for depression by his physician four years ago but has since stopped taking it.

Davis was first psychiatrically hospitalized in 2011, after using ketamine hydrochloride, causing him to believe that he may be God.  He was again hospitalized in May 2012, again speaking about divine intervention and the Holy Spirit "jump[ing] into him."

A third hospitalization occurred after Davis was found attempting to cut down a neighbor's tree, which he claimed to be "filled with gold" according to a "Native American prophecy."[4]  During this third period of hospitalization, Davis stated at one point that he was Jesus.

Overall, according to Dr. Kissin, Davis presented during their sessions as controlled and cooperative, although he exhibited difficulty in expressing himself at times due to the surgical removal of a portion of his tongue.  While denying any history of auditory or visual hallucinations, when the conversation turned to anything related to the pending criminal charges against him, Davis evidenced disordered thinking, became agitated in discussing signs and events perceived by him as relevant to his case, and made the assertion that he actually is Jesus, as proven by

---

[4]    On that occasion, Davis admitted to responding law enforcement officers that he had taken ketamine hydrochloride.

various signs and symbols.  Addressing her observations concerning the defendant's mental status, Dr. Kissin concluded as follows:

> Mr. Davis['s] insight is assessed as poor, in light of his lack of insight about his notable symptoms of mental illness.  Mr. Davis's judgment is questionable by history, in light of reported multiple recent problematic behaviors in the community.  However, he exhibited the capacity to remain in behavioral control throughout the course of the instant evaluation.

The results of MMPI-2 testing conducted at FMC Devens reflects a profile consistent with that of individuals experiencing a moderate degree of emotional distress concerned about their situation and prone to externalizing blame for their problems.

Addressing her diagnostic impression, while noting that the decline of the defendant's mental health appears directly related to his use of hallucinogenic drugs, Dr. Kissin noted that "Mr. Davis's compromised mental status including delusional, grandiose, religious and persecutory ideas appears to have persisted beyond the time he was experiencing active effects of substances."

During the course of the evaluation at FMC Devens, Davis maintained that he possesses divine powers, and that, as a result, he is facing persecution by the government.  According to Dr. Kissin, while at times Davis functions in a socially and interpersonally adaptive manner, he

"is typically standoffish and at times can become hostile when discussing his paranoid beliefs." Dr. Kissin diagnosed the defendant as suffering from "unspecified schizophrenia spectrum, and other psychotic disorder, with secondary diagnoses including cannabis use disorder, in a controlled environment, and other hallucinogen use disorder, also in a controlled environment."

Turning to the specifics of defendant's competency to stand trial, from Dr. Kissin's report it appears that the defendant understands the basic nature of the allegations against him as well as the severity of the charges he faces. Her report reveals that defendant Davis demonstrated a fair understanding of the nature of a criminal trial and the roles of the prosecutor and defense attorney, as well as a basic understanding of the concept of a plea bargain. Dr. Kissin's report makes the following observations regarding Davis's awareness of the court process:

> When asked about appropriate court conduct,
> Mr. Davis indicated one must 'Kiss the judge's
> ass, ask for breaks, and snitch on people.' He
> then added, "You[']re gonna see some stuff
> with me. I'm gonna say what I want. I'm
> gonna tell the whole story!'

> When asked whether he expected to be treated
> fairly by the Court, Mr. Davis replied, "It[']s God and
> Jesus. I don't have respect for the law . . . it's what
> I've been through. The judge's name is Skilling . . .
> The bible says you're not safe from the mark of the

> beast.'  When asked his opinion regarding the
> strength of the case against him, Mr. Davis replied,
> 'No matter what, they will convict me.'

According to Dr. Kissin's report, the defendant expressed anger

toward his assigned attorney, reportedly stating the following:

> 'He's a bad Jew.  He sucks as an attorney.  He
> complimented the DA about his evidence.  Is he a
> bad attorney?  I don't know, but he's doing a bad job
> for me.  I'm amazed they're bringing me to trial
> again, like 2013 years ago.'

In addition, Davis referred to Attorney Greenwald as a "bad seed," making

an association between the attorney's name and the "devil's blood seal."

According to Dr. Kissin, defendant's statements regarding his lawyer were

difficult to follow and largely incomprehensible.  When asked about his

defense in the case, Davis expressed anger toward Attorney Greenwald

and began describing irrelevant events, including reciting biblical

passages, ending in a "convoluted soliloquy about Judas" and claiming to

Dr. Kissin that there are forty-four ways he can prove he is Jesus.

In her report, Dr. Kissin states her opinion that Mr. Davis presents

with psychotic symptoms manifesting in delusional preoccupations.  His

conceptualizations of the situations around him tend to be imbued with

misguided and improbable ideas associated with these delusions.

Consequently, his thinking about the instant legal case tends to become

distorted, undermining his capacity to engage in productive discussions and make rational case-related decisions.  Dr. Kissin's report concludes by recommending that Davis be committed for further evaluation and treatment for restoration of competency, noting the following:

> Based upon the available information, it is my opinion that despite a degree of factual understanding regarding the operation of the criminal justice system, Mr. Davis's present psychiatric symptoms constitute a serious mental illness, namely a Psychotic Disorder, and serve to undermine his skills, ideas, and behaviors to the extent that his rational understanding of the nature and consequences of the proceedings against him is compromised, and he is unable to assist his attorney effectively in his defense.

During her testimony at the recent competency hearing, Dr. Kissin confirmed the contents of her report.  She acknowledged that, while Davis has misgivings about its fairness, he has a reasonably good understanding of the criminal process, as well as the charges against him.  According to Dr. Kissin's testimony, Davis also expressed a reasonable understanding of the roles of participants in a criminal trial and knowledge concerning plea bargains.  She cautioned, however, that Davis suffers from delusional thoughts not grounded in reality, and that this and other deficits could interfere with his ability to participate in his defense.  She also noted that when discussing specifics of the charges against him, Davis became more

convoluted and delusional.  During her testimony, Dr. Kissin reiterated her view that defendant is not competent to stand trial.

Davis testified on his own behalf during the recent hearing.  He testified that he understands Attorney Moynihan is his attorney, and understands and agrees with his trial strategy.  He also knows who Assistant United States Attorney Brown is and understands his role in the matter.  During his testimony, Davis exhibited a rational understanding of the concept of a plea bargain.  Davis testified that he has seen criminal trials on television, and comprehends the role of the judge and the jury. Davis stated that some of his friends have told him that he is Jesus and, based upon events that he has read about in the Bible and events that have occurred in his life, he believes that he actually might be Jesus.  He stated, however, that his beliefs in this regard can be set aside and would not interfere with his defense in this case.

Davis freely admits having frequently used marijuana and ketamine hydrochloride, and during his testimony stated that virtually all of the experiences leading him to conclude that he might be Jesus have occurred while he was under the influence of a hallucinogen.  Davis' mother also reports that, historically, defendant's drug use has constituted the most significant mental health concern, noting that he has been "in and

out of drug rehabilitation programs since his early teens," and that, in addition to marijuana and ketamine hydrochloride, in April 2012, Davis began using "bath salts."

As was previously observed, in the ordinary case it is the defendant who is claiming to be incompetent to stand trial. In this instance, the government seeks to have defendant be declared incompetent while both defendant and his current counsel argue that he does understand the charges against him, is able to meaningfully participate in the proceedings, and is capable of assisting his counsel in defending him. While defendant's position is contradicted by Dr. Kissin, and the defendant does suffer from mental health issues, I conclude that much of the basis for Dr. Kissin's conclusions stems from Davis' dissatisfaction with his prior counsel, as well as the effects of his use of controlled substances.[5] Attorney Moynihan, a seasoned defense attorney, has indicated his belief that the defendant understands the severity of the charges against him, the proceedings that will follow, and the roles of the various participants, and will be able to effectively aid in his own defense. Under these circumstances, I do not find, by a preponderance of the evidence, that the

---

[5]    Given that Davis is being held in custody pending trial, it is presumed that the use of controlled substances will not be a factor in his preparation for and participation in the trial.

defendant is not presently capable to stand trial.

III.   SUMMARY AND RECOMMENDATION

Having carefully considered the psychological report of Dr. Kissin and her testimony, as well as the testimony of the defendant, and after having heard the arguments of counsel, including from defendant's present lawyer, I conclude that the defendant possesses a sufficient present ability to consult with his lawyer with a reasonable degree of rational legal understanding, and that he has a rational, as well as factual, understanding of the charges pending against him.  Accordingly, it is hereby respectfully

RECOMMENDED that the court find the defendant competent to stand trial in this matter.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:   April 3, 2014
         Syracuse, New York

David E. Peebles
U.S. Magistrate Judge